# APRIL TERM, 1890.*

## MYRON H. ELLIS v. DYTON G. SIMPKINS.

| 81 | 1 |
| 100 | 550 |

*Replevin—Demand—Damages—Evidence—Charge to jury.*[1]

1. In this case, defendant having come lawfully into possession of the property, it is held that a demand was necessary before bringing replevin therefor.

2. A defendant in replevin who has no interest in or claim upon the property can only recover nominal damages, if judgment passes in his favor for want of a demand.

3. Evidence of the general reputation of a certain blood of horses, as fast trotters, is admissible as tending to show the value of a stallion of that blood; but it is error to permit the witness to name particular horses, and give their reputed time as trotters. If such testimony is admitted, it is error to refuse to allow the opposite party to show, in rebuttal, that certain horses of the same blood have *not* developed into fast trotters.

4. Plaintiff replevied a stallion of defendant, and the parties prosecuted and defended upon the following theories, respectively:

   Plaintiff claimed that the horse was purchased for $300, one-half of which sum was furnished by plaintiff, and that he signed defendant's note for the other half under an agreement that, if defendant paid the note, the parties were to be *equal* owners of the horse, but if plaintiff had to pay it, by reason of defendant's default, he should be *sole* owner. The horse was to be kept on plaintiff's premises, where defendant was to be boarded, and he was to look after and break some colts for. plaintiff. Before the maturity of the note the defendant took the horse away, and failing to pay the note it was paid by the plaintiff, who informed defendant of the fact, and demanded the horse, which demand was refused, and this suit was commenced.

---

* Continued from Vol. 80.
[1] For full digest of points decided, see *Table of Cases Reported.*

Defendant claimed that he purchased the horse on his own account, and that plaintiff loaned him $150, and signed his note for $150; that there was no agreement at this time that he should own half of the horse, but defendant agreed to let him have $150 worth of him until the $150 loan was paid; that afterwards it was agreed that plaintiff should own one-half of the horse for the $150, and that he should take up the note, and give defendant two years in which to pay it. Plaintiff was to board defendant and the horse, and defendant was to handle his colts, etc.; that defendant took the horse away with plaintiff's consent, plaintiff agreeing to pay half of the expenses, and was to have half of the profits arising from the service of the horse. It was further agreed that anything coming due to defendant for the keeping and other expenses of the horse should be applied in payment of the note; that there was no agreement that plaintiff should own the horse; that plaintiff never demanded the horse of defendant; and that, at the time the suit was brought, he was indebted to the defendant for expenditures made in behalf of the horse, applicable on the note, to an amount more than sufficient to pay the note.

Upon the trial defendant was allowed, contrary to plaintiff's objection, to prove his account, and in rebuttal the plaintiff denied the account, or that he agreed to apply it on the note, and testified that defendant was indebted to him aside from the note in question. Plaintiff also *offered* to show that defendant only paid $100 of the $150 on the horse, and attempted to show, on defendant's cross-examination, that the defendant had a secret understanding with the vendor that $50 of the $150 should be paid back to the defendant, which offer was refused, and the proposed cross-examination excluded. The Court, in passing upon these questions, hold:

*a*—That the evidence relating to defendant's account was admissible under his theory of the joint ownership of the horse, and the application on the note of the excess paid by defendant, over his half, for the expenses of the horse.

*b*—That the proposed cross-examination of defendant as to the repayment or retention of the $50, was admissible as affecting his credibility, and also in rebuttal of defendant's claim of a lien upon the horse for the expenses paid, as said $50 might have been sufficient to discharge such lien.

*c*—That the court correctly instructed the jury that, if the defendant performed services and expended money in training the horse, and in consideration of the same plaintiff agreed to take up the note and give the defendant further time in which to pay it, and that plaintiff's share of such expenses should be applied towards such payment, then the defendant had a right

to rely upon such agreement, and plaintiff could not recover; and that, if the jury found against the plaintiff on the question of the ownership of the horse, the only other question for their consideration was his value.

Error to Kalamazoo. (Buck, J.) Argued April 29 and 30, 1890. Decided May 16, 1890.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Walter S. Powers* and *James M. Powers*, for appellant, contended:

1. It is only where one person delivers to another an animal to be kept or cared for that he has a lien for such keeping or care; citing How. Stat. § 8399.
2. The testimony, as to the reputation of the breed of horses to which the stallion in question belonged, was hearsay. Statements of fact, made by a third person to a witness, are purely hearsay, and inadmissible as evidence; citing *Hill v. Robinson*, 23 Mich. 24; *Houghton County v. Land Commissioner*, Id. 270; *Kost v. Bender*, 25 Id. 515; *Perkins v. People*, 27 Id. 386; *Atwood v. Cornwall*, 28 Id. 336; *Hamilton v. People*, 29 Id. 173.
3. Where defendant has no real interest in the property, either general or special, but is still entitled to judgment, for want of a demand before bringing suit, he can recover only nominal damages; citing *Weber v. Henry*, 16 Mich. 399; *Darling v. Tegler*, 30 Id. 54; *Hinchman v. Doak*, 48 Id. 168.

*Boudeman & Adams*, for defendant, contended:

1. Defendant was entitled to present his theory of the case to the jury. The evidence relating to the account went to the very gist of the action, and defeated plaintiff's title, and was admissible; citing *Belden v. Laing*, 8 Mich. 500; *Clark v. West*, 23 Id. 242; *Giddey v. Altman*, 27 Id. 206; *Hunt v. Strew*, 33 Id. 85.
2. This Court has repeatedly held that error cannot be assigned on the admission or exclusion of evidence on rebuttal which might have been introduced in chief; citing *Danielson v. Dyckman*, 26 Mich. 169; *Brown v. Marshall*, 47 Id. 576; *Beebe v. Koshnic*, 55 Id. 604; and the discretion of the circuit judge, in refusing to admit testimony on cross-examination as to the $50 item, was fairly exercised; it not affecting plaintiff's case; citing *Fick v. Runnels*, 48 Mich. 302.

3. Hinchman knew by repute that the dam and sire of this horse were good stock. This is not hearsay; citing *Fraser v. Jennison*, 42 Mich. 206; and questions of family relationship are admissible; citing *Van Sickle v. Gibson*, 40 Id. 170.

4. Replevin rests on a tortious taking or detention, and where the possession was lawfully acquired, a demand is a condition precedent to suit, and when defendant claims an interest he may recover it on failure to make such demand; citing *Campbell v. Quackenbush*, 33 Mich. 288; *Cadwell v. Pray*, 41 Id. 307; *Adams v. Wood*, 51 Id. 411.

5. One partner cannot maintain replevin against his copartner for partnership property; citing *Witherell v. Spencer*, 3 Mich. 123; *Kindy v. Green*, 32 Id. 310; *Coan v. Mole*, 39 Id. 454; *Kline v. Kline*, 49 Id. 419.

6. Plaintiff must have been entitled to the entire interest in, or have had a right to the exclusive possession of, the horse, or he cannot recover; and these conditions are not established by the evidence; citing *Kindy v. Green*, 32 Mich. 310; *Hart v. Fitzgerald*, 2 Mass. 509; *Kimball v. Thompson*, 4 Cush. 447; *Frierson v. Frierson*, 21 Ala. 549.

7. Plaintiff not being entitled to recover on the whole case, the judgment will not be disturbed for erroneous rulings; citing *Hollister v. Brown*, 19 Mich. 163; *Barnum v. Stone*, 27 Id. 332; *McDonough v. Sutton*, 35 Id. 1; *Eberstein v. Camp*, 37 Id. 176.

MORSE, J.   This is an action of replevin brought by the plaintiff in justice's court to recover the possession of a certain stallion known as "Victor Middleton." The plaintiff filed the ordinary declaration in replevin, and the defendant pleaded the general issue, and gave notice that he would prove that the horse was the joint property of plaintiff and defendant, and that the latter was entitled to the possession of the same at the time of commencement of suit, and that the horse was worth over $600.   The plaintiff prevailed in justice's court. Upon appeal to the circuit court for the county of Kalamazoo, the defendant, waiving a return, had verdict and judgment for one-half of the value of the horse, assessed by the jury at the sum of $372.75.   Plaintiff comes here upon writ of error.

Plaintiff claimed to have derived his title. to the horse as follows:

Some time during the summer or fall of the year '1886 the defendant came to the plaintiff, and represented to him that one L. E. Hinchman owned the horse, which was then a two-year-old colt, and that he would sell it for $300; that the colt was well worth the money, and Hinchman would sell it to him. cheaper than to any one else; that he (defendant) did not have the money to pay for the colt, and wanted plaintiff to go in with him and buy the colt together. After some talk, and after the lapse of two or three weeks' time, 'an agreement was made between plaintiff and defendant by which the plaintiff was to furnish $150 to pay towards the colt, and sign a note with the defendant for $150 due in one year for the balance of the purchase price, and that if the defendant paid the note when it became due he should own a one-half interest in the colt, and the plaintiff the other half; but if the defendant did not pay the note, and the plaintiff had to pay it, the plaintiff should own the whole of the colt. The horse was to be kept at the plaintiff's place in Assyria, Barry county. Defendant was to have his board there with the plaintiff, and he agreed to look after and break some colts for plaintiff. Before the note became due defendant took the horse away, claiming that he was going to his brother's in Augusta, Kalamazoo county. The defendant failed to pay the note, and after some time the plaintiff paid it, by taking it up and giving his individual note for its amount, which was received by the holder in full payment of it. Plaintiff then acquainted defendant with the fact of his payment of the note, and demanded the horse. Upon the refusal of defendant to give up the horse to plaintiff this suit was instituted.

The defendant's theory was as follows: He made

arrangements. with one Hinchman, the owner of the colt, to purchase it on his own account for $300, to pay $150 in cash, and give his note, with a signer, for the balance. He went to plaintiff, and told him of the chance. Plaintiff let him have the money, and signed the note with him. There was no agreement at the time that plaintiff should own half the horse, but defendant "agreed to let him have $150 worth of him until the $150 was paid" that plaintiff loaned to defendant. Afterwards it was agreed that plaintiff should have one-half of the horse for the $150; also that he should take up the note, and give defendant two years to pay it in. He was to board defendant and the horse, and defendant was to handle his colts, drive them, and, if necessary, doctor his horses. Defendant claimed he went away from plaintiff's with his consent, and that the agreement was that plaintiff should pay half of the expenses, and have half of the profits from the service of the stallion. And the further arrangement was made that anything becoming due to defendant from plaintiff for the keeping and other expenses of the horse should be applied in payment of the note; that there was never any agreement that plaintiff should own the whole of the horse; that he never demanded it of defendant; and that, at the time suit was brought, the plaintiff was indebted to the defendant in a considerable sum expended in behalf of the horse, which should be applied on the note, and which was more than enough to pay the same.

Upon the trial the plaintiff's counsel objected to any showing of the defendant's account against the plaintiff. The objection was overruled. Upon rebuttal, plaintiff denied the account, or any agreement to apply it on the note, and gave testimony that defendant was indebted to him from $25 to $27 outside of the note in question. Many of the errors assigned relate to the introduction of this evidence in relation to this account. The testimony

was admissible under the defendant's theory that there was no agreement that plaintiff should own the whole of the horse, and that what defendant paid more than his half of the expense of the horse, and other services that he rendered plaintiff, he should apply in payment of the note, which note plaintiff was to take up and hold two years, to be paid within that time to him by defendant.

In rebuttal the plaintiff offered to show that when defendant bought the colt of Hinchman he only paid $100, instead of $150, as he represented to plaintiff, calling Mr. Hinchman for that purpose. The offered proof was rejected. He also attempted to show, on cross-examination of the defendant, that there was a secret understanding between Hinchman and defendant that $50 of the $150 should be paid back to the latter. We think the testimony was admissible, on cross-examination of the defendant, as affecting his credibility as a witness; and also, in view of the claim of the defendant's counsel that he would have a lien upon the horse for the expenses paid by him, made upon the trial, it was admissible in rebuttal of such claim, as it might have been found sufficient to discharge this lien; as, if the secret understanding existed and was carried out, defendant would have $50 of the plaintiff's money to apply on the amount due from plaintiff to him for the expenses of the horse.

It is also assigned as error that the court permitted evidence on the part of the defendant, showing the pedigree of the horse, as registered in Wallace's American Trotting Register, the only standard register of trotting horses in the United States. From this it appeared that the colt in question, Victor Middleton, was sired by Bay Middleton. With this register was introduced the deposition of Wallace, the compiler, who testified as to the requirements necessary in a horse in order to be regis-

tered as a standard trotter, and also as to his sources of information which led him to register this colt. This information he derived from Louis E. Hinchman, the owner of the colt, and from Mr. John T. Bates, of Kentucky, who had bred the dam and granddam of said Victor Middleton. Bay Middleton, the sire of Victor, was a registered trotter. We think this evidence was admissible, as bearing upon the value of the stallion. But the court went further, and permitted testimony to be introduced showing the reputation of the Bay Middleton blood as trotters, and allowed witnesses to name several horses of that stock, and to state the .reputed time of such horses as trotters. It was proper to show the general reputation of this blood of horses as fast trotters, but the witnesses should not have been permitted, on direct examination, to name particular horses of this blood, and to give their reputed time as trotters; and, as this was allowed on the part of the defendant, error was also committed in the refusal of the court to permit plaintiff to show on rebuttal that certain horses of the same blood had not developed into fast trotters. If the value of the Bay Middleton blood in this horse was at issue (and it was), the plaintiff should have been permitted, in justice, to go as much into detail to show its worth, or want of it, as the defendant.

The remaining errors assigned relate to the charge of the. court. As before said, the testimony of the accounts of the defendant against the plaintiff, and that there was an agreement that the same should be applied in payment of the note, was admissible, under defendant's theory, as showing, or tending to show, that there could not have been, if this was the case, any agreement that, upon payment of the note by plaintiff to Hinchman, the person of whom the horse was bought, the horse should become the sole property of the plaintiff. But it is

claimed by plaintiff's counsel that, under the charge of
the court, the jury were allowed to strike a balance on
the accounts, and apply such balance on the note for the
purpose of defeating plaintiff's title to the horse. This
claim is not supported by the record. The jury were per-
mitted to take this evidence into account to determine
whether or not the plaintiff was sole owner of the horse
at the time the suit was commenced, the court instruct-
ing them correctly that, if the defendant performed serv-
ices and expended money in the training of the horse,
and in consideration of the same the plaintiff agreed to
take up the note and give the defendant further time to
pay it, and that plaintiff's share of the expenses of keep-
ing the horse should be applied towards the payment of
the note, then the defendant would have a right to rely
upon this agreement, and plaintiff could not recover;
and, further, that, if the jury found against the plaintiff
on the ownership of the horse, they should then consider
no other question except the value of the horse.

It is also urged as error that the court instructed the
jury that if they found the plaintiff to be the owner of
the horse, and then found that defendant expended money
on the keeping of the horse, for shoeing, and for that
which would be called necessary for the horse, he would
be entitled in this action to a verdict for the amount of
such money at least, provided plaintiff's account against
defendant did not exceed or equal defendant's account.
In such case defendant could not recover anything. This
charge was proper, under the circumstances in the case.
The plaintiff admits that at first he owned only one-half
of the horse, and that he agreed to be at half of the
expense, and share in half of the profits. He became
owner, upon his own theory, because he had to pay the
note of $150 to Hinchman. Under this arrangement, he
could not take the horse until he had paid to defendant

his full share of the expenses for the necessary care and maintenance of the horse. Defendant would have a lien upon the horse for what he had paid out over and above half, less what he might owe plaintiff. Under this view, however, as heretofore stated, there was error in not permitting plaintiff to show that defendant had $50 of his money, which he did not pay for the horse.

The jury evidently found that plaintiff was not the owner of the horse, and that the parties were joint owners of the same, as they rendered a verdict which, in view of all the testimony, must have been meant to represent the value of half of the horse, as defendant's whole account for everything was only $204, and much of this was not at all connected with this horse, but for other services; and, under this finding, the error in relation to the $50 was harmless, as the state of the accounts between the parties was immaterial, unless the plaintiff was found to be the owner of the whole of the horse. It is noted here, because the case must be reversed, and a new trial granted, on account of the errors of the court above noted as to the reputed time of particular horses of the Bay Middleton blood, which errors may have influenced or affected the finding of the value of the horse, and therefore may have been harmful to plaintiff.

Defendant, having come lawfully into the possession of the horse under the plaintiff's own testimony, was entitled to demand for the same from the plaintiff, or some one in his behalf, before replevin could be maintained, even if the plaintiff, at the time of the issuing of the writ, had become sole owner of the horse by the payment of the note to Hinchman. But the court erred in telling the jury, without any qualification, that, if they found no demand was made, the defendant could recover half of the value of the horse, with interest at 6 per cent.

from the time of the taking under the writ. If the defendant was found to be joint owner, replevin could not be maintained, and the question of demand was immaterial; and, if the plaintiff was found to be the sole owner, the jury should have been instructed that, if they found no lien for defendant, the defendant could only recover nominal damages. Under such circumstances, having no interest in or claim upon the property, he could not recover half the value of the horse. *Hinchman v. Doak,* 48 Mich. 168 (12 N. W. Rep. 39); *Weber v. Henry,* 16 Id. 399; *Darling v. Tegler,* 30 Id. 54; *Gidday v. Witherspoon,* 35 Id. 368; Wells, Rep. § 372.

The judgment must be reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.